IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE,**<br><br>             **Plaintiff,**<br>        v.<br><br>**UNITED STATES,**<br><br>             **Defendant.** | Before: Hon. _____,<br>             Judge<br><br>Court No. 25-00165 |

## COMPLAINT

Plaintiff, American Alliance for Solar Manufacturing Trade Committee ("Plaintiff"), by and through their attorneys, allege and state as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this complaint to contest certain portions of the U.S. Department of Commerce's ("Commerce") final determination in the antidumping duty investigation of *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand*. *See* Issues and Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand*, 90 Fed. Reg. 17,395 (Dep't Commerce Apr. 25, 2025) (final affirm. deter. of sales at less-than-fair-value and final affirm. deter. of critical circumstances) ("IDM"); *see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the Socialist Republic of Vietnam: Amended Final Antidumping Duty Deter.; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 26,786 (Dep't Commerce June 24, 2025) ("AD Order"); *Crystalline Silicon*

Court No. 25-00165

*Photovoltaic Cells, Whether or Not Assembled Into Modules, From the Socialist Republic of Vietnam: Amended Final Antidumping Duty Deter.; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders; Correction*, 90 Fed. Reg. 29,843 (Dep't Commerce July 7, 2025).

## JURISDICTION

2.　This Court has jurisdiction over this action to review Commerce's final determination pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(II) and (B)(i) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i).

## STANDING

3.　Plaintiff is an association, a majority of whose members are composed of manufacturers in the United States of a domestic like product, and was the petitioner in the proceeding underlying this complaint. Plaintiff is thus an interested party within the meaning of 19 U.S.C. §§ 1561a(f)(3) and 1677(9)(F). Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.　Plaintiff commenced this action by filing a Summons on July 24, 2025, within 30 days after publication in the Federal Register of the AD Order. *See* Summons (Ct. Int'l Trade July 24, 2025), ECF No. 1; AD Order. Plaintiff is filing this Complaint within 30 days after filing the Summons. The Summons and Complaint are therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2) and Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

### Selection of Mandatory Respondents

5. Commerce initiated the antidumping investigation of *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand* on May 14, 2025, following receipt of a petition filed with Commerce and the United States International Trade Commission by Plaintiff on April 24, 2024. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 43,809 (Dep't of Commerce May 20, 2024) (initiation of less-than-fair-value investigations).

6. Commerce issued quantity and value ("Q&V") questionnaires to Thai producers of crystalline silicon photovoltaic ("CSPV") cells and modules. *See* Memorandum from Drew Jackson, through Eric B. Greynolds, to James Maeder, re: *Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Respondent Selection* (June 21, 2024) ("Respondent Selection Memo") at 2. Commerce explained that it intended to select mandatory respondents for the investigation based on responses to the Q&V questionnaires rather than follow its standard practice of using import data from the U.S. Customs and Border Protection ("CBP") to select mandatory respondents. *Id*.

7. On June 12, 2024, Plaintiff timely submitted comments on the Q&V questionnaire responses. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Thailand: Comments on Q&V Questionnaire Responses and Respondent Selection* (June 12, 2024). Plaintiff noted that, due to the complexity of the Q&V questionnaires, it was unclear whether the responses were accurate, and urged Commerce to issue a supplemental questionnaire requiring that

**Court No. 25-00165**

respondents explain their methodology for reporting the quantity and value of their imports during the period of investigation. *See id*. at 2-4. Plaintiff also noted that Commerce was, at a minimum, required to select two companies as mandatory respondents. *Id*. at 5.

8.     Despite multiple companies reporting that they had imports of subject merchandise during the period of investigation, Commerce selected only one mandatory respondent, Trina Solar Science & Technology (Thailand) Ltd. ("TTL"). *See* Respondent Selection Memo at 4-7, Attachment.

9.     On June 27, 2024, Plaintiff commented on Commerce's respondent selection, requesting that Commerce select one additional respondent, consistent with the U.S. Court of Appeals for the Federal Circuit's controlling precedent that Commerce must generally select more than one mandatory respondent for individual review. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Thailand: Comments on Respondent Selection* (June 27, 2024) at 1-4.

10.     Commerce did not select an additional mandatory respondent. *See, e.g*, Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand*, 89 Fed. Reg. 96,215 (Dep't Commerce Dec. 4, 2024) (prelim. affirm. deter. of sales at less-than-fair-value, affirm. deter. of critical circumstances, postponement of final deter., and extension of provisional measures) at 2 ("PDM").

11.     On March 17, 2025, Plaintiff filed its case brief before the agency. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from Thailand: Case Brief* (Mar. 17, 2025) ("Pl.'s Case Br."). In its case brief, Plaintiff argued that Commerce should have selected two mandatory respondents in this investigation. *See id*. at 39-40.

**Court No. 25-00165**

12.   In its final determination, Commerce determined not to select an additional mandatory respondent. IDM at 8. Commerce claimed that because of the proportion of imports accounted for by TTL, it was not required to select at least two mandatory respondents. *See id*.

**<u>Commerce's Refusal to Apply Movement Expenses to the PMS Adjustment</u>**

13.   In the course of the investigation, Plaintiff alleged that there was a cost-based particular market situation ("PMS") affecting the prices paid by Thai producers for certain material inputs, including silicon wafers and solar glass. *See* Memorandum from Scot Fullerton to Christopher Abbott, re: *Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Post-Preliminary Analysis of the Particular Market Situation Allegation* (Mar. 24, 2025) at 2 ("Post-Prelim. PMS Analysis").

14.   In connection with its investigation of Plaintiff's PMS allegation, Commerce solicited world market prices for silicon wafers and solar glass that were "appropriately adjusted for sales terms including ocean freight, import duties, and brokerage and handling expenses." *See* Letter from Drew Jackson, through Stephen Bailey, to All Interested Parties, re: *Less-Than-Fair-Value Antidumping Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand: Particular Market situation Allegation Request for Information* (Nov. 19, 2024). In response to this request for information, Plaintiff placed on the record certain transport related expense benchmarks, including brokerage and handling, inland freight costs, ocean freight costs, insurance rates, and Thai import duty rates. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Thailand: Information Regarding Particular Market Situation Allegation* (Nov. 21, 2024) at 2-3, Exhibits 3-17. TTL subsequently placed its own benchmarks

Court No. 25-00165

for ocean freight on the record. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand: Rebuttal to Petitioner's Response to PMS Request for Information* (Nov. 25, 2024) at 12-13, Exhibit 5.

15. In its post-preliminary PMS analysis, Commerce correctly found that a PMS "exist{ed} with respect to the price of wafers and solar glass in Thailand" and relied on data that did not include Chinese production and sales of silicon wafers and solar glass in its calculation of the cost of production ("COP"). *See* Post-Prelim. PMS Analysis at 22-23. However, Commerce failed to adjust the world market prices it used to account for movement and import expenses, including brokerage and handling, inland freight costs, ocean freight costs, insurance rates, and Thai import duty rates.

16. Plaintiff argued in its brief to the agency that Commerce that it should make these adjustments to accurately reflect the prices that would be paid by Thai producers to manufacture subject merchandise. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from Thailand: Letter in Lieu of Particular Market Situation Case Brief* (Mar. 31, 2025) at 2.

17. In its final determination, Commerce declined to adjust the PMS benchmarks for wafers and solar glass to include ocean freight and other transport-related expenses. *See* IDM at 51-52.

**Commerce's Selection of Constructed Value Profit Ratio Sources**

18. Because TTL did not have a viable home or third-country market during the period of investigation, Commerce determined to calculate normal value for TTL based entirely on constructed value ("CV"). *See* PDM at 14-16.

**Court No. 25-00165**

19.      Accordingly, on October 10, 2024, Commerce solicited information on CV profit and requested that interested parties provide surrogate financial statements with which to calculate the CV profit. *See* Letter from Heidi Schriefer to All Interested Parties, re: *Antidumping Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from Thailand: Request for Constructed Value Profit and Selling Expense Comments and Information* (Oct. 10, 2024).

20.      Both Plaintiff and TTL placed surrogate financial statements on the record. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Thailand: Comments and Factual Information Relevant for CV Profit and Selling Expenses* (Oct. 18, 2024) ("Plaintiff's CV Profit Submission"); Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Less-Than-Fair-Value-Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand: Submission of Factual Information Concerning Profit and Selling Expenses* (Oct. 18, 2024) ("TTL's CV Profit Submission"). Petitioner placed on the record financial statements from five companies, including Risen Solar Technology Sdn. Bhd. ("Risen Solar"), a Malaysian producer of solar cells and modules. *See* Plaintiff's CV Profit Submission at 1, Exhibit 2. TTL placed on the record financial statements from three Thai companies: Gintech (Thailand) Company Limited ("Gintech"), M.L.T. Solar Energy Product Co., Ltd. ("MLT Solar"), and Talesun Technologies (Thailand) Co., Ltd. ("Talesun"). *See* TTL's CV Profit Submission at 2, Exhibits 2A, 3A, and 4A.

21.      Plaintiff subsequently placed on the record evidence demonstrating that the financial statements of Gintech, MLT Solar, and Talesun were not appropriate to use for the calculation of CV profit. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Crystalline*

7

**Court No. 25-00165**

*Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Thailand: Rebuttal CV Profit Information* (Oct. 28, 2024). Specifically, Plaintiff noted that these financial statements (1) were not publicly available and (2) reflected countervailable subsidies received from the Government of Thailand ("GOT"). *Id*. at 2-3.

22. Despite being made aware of these deficiencies, in the preliminary determination, Commerce used the financial statements of Gintech, M.L.T. Solar, and Talesun to calculate TTL's CV profit rate. PDM at 17-18.

*23*. In its case brief, Plaintiff argued that the Department should instead calculate CV profit using the financial statements of Risen Solar because it was a producer of identical merchandise, it was located in a similarly situated country, and the financial statements were publicly available. Pl.'s Case Br. at 44-45. Plaintiff also argued that the financial statements of Gintech, MLT Solar, and Talesun were not suitable to use because they (1) were not publicly available and (2) reflected countervailable subsidies received from the GOT. *Id.*

24. In the final determination, Commerce again used the financial statements of Gintech, M.L.T. Solar, and Talesun to calculate TTL's CV profit rate. IDM at 14.

### Commerce's Major Input Analysis

25. In the preliminary determination, Commerce adjusted TTL's reported cost of manufacturing ("COM") in accordance with the transactions disregarded rule and major input rule under 19 U.S.C. § 1677b(f)(2)-(3) to account for transactions made between TTL and affiliated parties. *See* PDM at 14; Memorandum from Christopher Winfield, through Heidi Schreifer, to Stephanie Arthur, re: *Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Trina Solar Science & Technology (Thailand) Ltd.* (Nov. 27, 2024) at 2, Attachments 1A-1C ("Prelim. Cost Memo").

8

**Court No. 25-00165**

26. In making these adjustments, Commerce made a number of intermediary decisions that Plaintiff identified as inconsistent with the record and/or agency practice.

27. First, Commerce inappropriately extrapolated a market value for tin ribbon based on TTL's purchases of other inputs from the same affiliated party and from unaffiliated parties for purposes of its transactions disregarded analysis. IDM at 30. TTL reported purchasing ribbon from affiliated parties. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand: Section D Supplemental Questionnaire Response* (Nov. 12, 2024) at SuppD-14, Exhibit SD-4e-1 (Rev. D-6.1). Plaintiff argued before the agency that Commerce should have relied on publicly available import data to value tin ribbon (HTS 8311.3099). Pl.'s Case Br. at 30-31. However, in its final determination, Commerce claimed that it was not required to resort to import data to value tin ribbon in situations where an affiliated party provided multiple inputs to a respondent and the respondent had no unaffiliated purchases. IDM at 29-30.

28. Second, in implementing the transactions disregarded and major input rules, Commerce incorrectly calculated the adjustments to COP. In the preliminary determination, Commerce adjusted TTL's cost of production for major inputs by using the reported transfer price at which TTL purchased these inputs from its affiliated supplier. *See* Prelim. Cost Memo at Attachment 1A. However, because TTL reported its costs based on its affiliates' COP, and not the transfer price, in its cost database, for purposes of making adjustments to COP, Plaintiff argued in its case brief that Commerce should have treated TTL's affiliates' cost of production as the baseline number to be measured against the benchmark price, not the transfer price. *See* Pl.'s Case Br. at 38.

9

**Court No. 25-00165**

29. In the final determination, Commerce failed to address the substance of Plaintiff's contention, merely stating that it disagreed, and that at cost verification it had "confirmed that TTL's cost database reflects the transfer prices paid to the affiliated suppliers and not the affiliated suppliers' COPs." IDM at 30.

30. Third, Commerce erred in using a price from a non-market economy producer as a benchmark for market price. IDM at 30. In its preliminary determination, for aluminum frames, solar glass, and junction boxes inputs, Commerce compared TTL's reported transfer price to the weight-averaged market price and adjusted TTL's reported COM for the differences between the transfer prices and weight-averaged market prices where the weight-averaged market price exceeded the transfer prices. *Id*.

31. Before the agency, Plaintiff argued that Commerce erred in looking to purchases from unaffiliated suppliers from non-market economies because such suppliers could not offer prices that fairly reflected market value, IDM at 30, and were thus inappropriate for measuring whether TTL's affiliated purchases should be disregarded. Pl.'s Case Brief at 33-34. Plaintiff argued that the Department should instead use Thai import data to test whether TTL's affiliated purchases of aluminum frames, solar glass, and junction boxes should be disregarded for purposes of calculating COM. *Id.* at 35-36.

32. In its final determination, Commerce failed to correct its transactions disregarded analysis, stating that it found the issue moot with respect to solar glass, and that it did not find that the prices from non-market economy companies were an unreasonable reflection of the production and sale of the products. IDM at 30.

33. Fourth, Commerce erred in its use of Malaysian and Mexican import wafer data to calculate the surrogate COP for silicon wafers. In the preliminary determination, to implement

Court No. 25-00165

the major input rule for silicon wafers, Commerce tested the transfer prices against both a market price and the COP of TTL's affiliates. *See* Prelim. Cost Memo at 2. Commerce, "in the absence of {TTL's} affiliates' COP . . ." derived a surrogate COP for silicon wafers by using import data reported by Trade Data Monitor ("TDM") for Malaysia, Turkey, Mexico, and Indonesia. *See id*. at 2.

34. Plaintiff argued that the record did not support Commerce's use of import data for Malaysia or Mexico. Pl.'s Case Br. at 27-29. Specifically, Plaintiff argued that the TDM Malaysian import data was unreliable and that Commerce should have used Global Trade Atlas ("GTA") import data for Mexico instead of TDM import data, as GTA is Commerce's preferred import data source. *Id*. at 27-29.

35. In the final determination, Commerce stated that Plaintiff's arguments that it should not use the Malaysia and Mexico import data from TDM was moot given Commerce's PMS determination and PMS adjustment. IDM at 29.

## CLAIMS AND BASES FOR RELIEF

### Count I

36. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 35.

37. Commerce's determination not to select a second mandatory respondent is not supported by substantial evidence and is otherwise not in accordance with law.

### Count II

38. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 37.

39. Commerce's determination not to adjust the PMS benchmarks for silicon wafers and solar glass to account for movement expenses is not supported by substantial evidence and is otherwise not in accordance with law.

11

Court No. 25-00165

### Count III

40. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 39.

41. Commerce's determination not to use Risen Solar's financial statements, and instead use the financial statements of Gintech, M.L.T. Solar, and Talesun, to calculate TTL's CV profit is not supported by substantial evidence and is otherwise not in accordance with law.

### Count IV

42. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 41.

43. Commerce's determination not to extrapolate a market value for tin ribbon based on TTL's purchase of other inputs from the same affiliated party for purposes of its transactions disregarded analysis is not supported by substantial evidence and is otherwise not in accordance with law.

### Count V

44. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 43.

45. Commerce's determination to calculate COP adjustments using TTL's reported transfer costs instead of TTL's affiliates' cost of production is not supported by the record and is otherwise not in accordance with law.

### Count VI

46. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 45.

47. Commerce's determination to use a price from non-market economy producers as benchmarks for market price is not supported by substantial evidence and is otherwise not in accordance with law.

### Count VII

48. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 47.

**Court No. 25-00165**

49.     Commerce's determination to use of Malaysian and Mexico import wafer data to calculate the surrogate COP for silicon wafers is not supported by substantial evidence and is otherwise not in accordance with law.

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1)      Hold that Commerce's final determination in the antidumping investigation of *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand* is unsupported by substantial evidence and otherwise not in accordance with law; and

2)      Remand the final determination to Commerce for disposition with the Court's final opinion.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Stephanie M. Bell, Esq.
Kimberly A. Reynolds, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to American Alliance for Solar Manufacturing Trade Committee*

Dated: August 22, 2025

# **CERTIFICATE OF SERVICE**

PUBLIC SERVICE

*American Alliance for Solar Manufacturing Trade Committee v. United States*
**Court No. 25-00165**

I certify that a copy of this public submission was served on the following parties, via certified mail and electronic service, on August 22, 2025.

*/s/ Stephen A. Morrison*
Stephen A. Morrison, Esq.

Matthew R. Nicely, Esq.
**Akin Gump Strauss Hauer & Feld LLP**
2001 K Street, NW
Washington, DC 20006

Jonathan M. Freed, Esq.
**Trade Pacific PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003

Robert L. LaFrankie, Esq.
**Crowell & Moring LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Friederike Goergens, Esq.
**Greenberg Traurig, LLP**
2101 L Street, NW
Washington, DC 20037

Jonathan Thomas Stoel, Esq.
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004

Chunlian Yang, Esq.
**Alston & Bird LLP**
950 F Street, NW
Washington, DC 20004

Diana Dimitriuc Quaia, Esq.
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006

Dharmendra N. Choudhary, Esq.
**Grunfeld Desiderio Lebowitz Silverman Klestadt, LLP**
1201 New York Avenue, NW
Suite 650
Washington, DC 20005

| | |
|---|---|
| Mengya Zheng<br>**Zhonglun Law Firm**<br>20 Jin He East Avenue<br>Chaoyang District<br>Beijing 100020, China | General Counsel<br>**U.S. Department of Commerce**<br>14th Street and Constitution Avenue, NW<br>Washington, DC 20230 |
| Supervising Attorney<br>Civil Division – Commercial Litigation Branch<br>**U.S. Department of Justice**<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC 20044 | Attorney in Charge<br>International Trade Field Office<br>**Department of Justice, Civil Division**<br>Room 346, Third Floor<br>26 Federal Plaza<br>New York, NY 10278 |